## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00713-SCT

*JIMMIE ROGERS CARROW*

*v.*

*BETTY JEAN CARROW*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/97 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM T. REED |
| ATTORNEYS FOR APPELLEE: | CLAUDE V. BILBO, JR. |
| | DEAN HOLLEMAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 1/28/99 |
| MOTION FOR REHEARING FILED: | 3/17/99 |
| MANDATE ISSUED: | 5/20/99 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. On remand from a previous appeal,[1] the chancery court re-evaluated distribution of the marital assets in light of *Ferguson v. Ferguson* and *Chamblee v. Chamblee* as mandated by this Court in *Carrow I*. We conclude that the present distribution was an equitable one, and we affirm the judgment of the trial court.

### I.

¶2. Betty Jean and Jimmie Carrow were divorced in March 1992 after 29 years of marriage. She was not granted an equitable distribution of the couple's property. After her motion to reconsider was denied by the trial court, Betty Jean (Jean) appealed to this Court. On September 4, 1994, this Court reversed and remanded the case to the Chancery Court of Jackson County to make an equitable distribution between Jean and Jimmie in light of *Chamblee v. Chamblee,* 637 So. 2d 850 (Miss. 1994) and *Ferguson v. Ferguson,* 639 So. 2d 921 (Miss. 1994). *Carrow I*, 642 So. 2d at 908. This trial for equitable distribution was conducted on December 10-11, 1996. On remand, Jean and Jimmie stipulated to the division of certain property as follows:

1. That Jean Carrow shall be awarded the exclusive use, possession, and ownership of the Forts Lake,

Jackson County, Mississippi, home, and she shall be responsible for any indebtedness thereon;

2. That Jimmie Carrow shall be awarded the exclusive use, possession, and ownership of the Grand Bay, Alabama, home, and he shall be responsible for any and all indebtedness thereon;

3. That Jean shall be awarded the exclusive use, possession, and ownership of her retirement/pension plan through her employment, and all benefits resulting therefrom, with such retirement/pension plan valued at $30,000;

4. That Jimmie Carrow shall be awarded the exclusive use, possession, and ownership of his retirement/pension plan through his employer, and all benefits resulting therefrom, with such retirement/pension plan valued at over $40,000.

¶3. The facts concerning the marriage of the parties, their accumulation of certain real and personal property, and the contribution of both parties in relation to such property are set forth in the previous decision of this Court. Based on this Court's findings and testimony of the both parties on remand, the chancery court determined the marital property subject to equitable distribution included the Market Street and Martin Street Properties, both located in Jackson County, Mississippi, and the Corvette collection.

¶4. In distributing the marital assets, the trial court recognized that the Corvette collection was purchased during the marriage as a source of retirement income for both Jean and Jimmie. The court found that both parties contributed to the acquisition of the real and personal property. Jimmie Carrow contributed through income from employment, income from personal property, by working at his auto store, and by repairing the Corvettes in the collection. The court found Jean's contribution to be her income from employment, and her contribution to the stability and harmony of the marriage and family relationship by raising the parties' only child, and by caring for Jimmie, which gave him time to pursue other business endeavors, such as the buying, restoring, and selling of the Corvettes.

¶5. The Martin Street property, valued at $140,000, has an equity of $75,000. Jimmie, who rented out this property beginning June 5, 1992, received rental income totaling $27,300 for a 42 month period. The Market Street property was sold on December 21, 1984, for $125,000, from which Jimmie received $14,000 in equity from a $25,000 down payment. By the time of the second trial, Jimmie had received mortgage payments in the amount of $35,185. Horace Slay, an automobile dealer specializing in Corvettes, appraised the 31 car Corvette collection at $349,000, less 25% for missing serial numbers. The final value of the Corvettes totaled $261,750. The court found one of these Corvettes was purchased with $1,900 Jimmie borrowed from his parents, while another was purchased with $1,000 he inherited from his father.

¶6. After consideration of the aforementioned facts, the Chancellor distributed the property as follows:

1. Jean was awarded ½ interest in the Martin Street property. Jimmie retained all rental income received thus far from this property, totaling $27,300. Both parties were awarded the rental income from the property received after the date of the chancery court opinion.

2. Jean was awarded ½ interest in the note and deed of trust due and owing on the Market Street property, which equaled to one-half of $106,768.

3. Jimmie was awarded the Corvette collection, parts, and bodies, with the exception of 15 corvettes valued at $174,250, which were awarded to Jean. The value of the Corvettes awarded to Jimmie totaled

$177,250, plus $79,000, the estimated value of the parts and bodies.

¶7. Aggrieved by the distribution, Jimmie Carrow presently appeals to this Court for relief.

## II.

¶8. In his first assignment of error, Jimmie asserts that, notwithstanding the mandate of this Court and prior case law, the trial court awarded Jean Carrow more than one-half of the assets acquired by Jimmie Carrow during the marriage. He claims that does not reflect an equitable distribution.

¶9. This Court's scope of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Turpin v. Turpin,* 699 So. 2d 560, 564 (Miss. 1997) (collecting authorities). *See also Ferguson*, 639 So. 2d at 930.

¶10. Marital assets include any and all property acquired or accumulated during the marriage. *Hemsley v. Hemsley*, 639 So. 2d 909, 515 (Miss. 1994). Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. *Id.* at 915. In analyzing equitable distribution, this Court set out certain factors in *Ferguson* which the chancellor should use in making this determination. The chancellor need not make findings as to all the *Ferguson* factors, but may consider only those factors he finds "applicable" to the property in question. *Weathersby v. Weathersby*, 693 So. 2d 1348, 1354 (Miss. 1997).

¶11. Considering the aforementioned principles of law, it does not appear that the trial court failed to follow the mandate of this Court directing an equitable distribution of the marital assets of Jean and Jimmie Carrow. Awarding Jean one-half of the Martin Street property, one-half of the Market Street property's note and deed of trust due and owing, and part of the Corvette collection, which was to be used as retirement income for both parties, appears equitable in light of both parties' contributions to the marriage. Jimmie retained $27,300 in rental income received for the Martin Street property up to the December 10, 1996 trial date, with each party getting a share of the $10,353 projected future rental income from this property. Jimmie also retained $14,000 in equity from the sale of the Market Street property as well as over $30,000 received in mortgage payments at the time of trial. His share of the Corvette collection totaled $256,250 in value, while Jean's share totaled $174,250.

¶12. Jimmie claims the properties were not acquired jointly and that Jean was awarded more than one-half of his separate personal property. However, the court made the finding as to the marital assets specifically before making any distribution, as required in *Hemsley* 639 So. 2d 914. Indeed, the parties stipulated to the division of the two homes acquired during the marriage and to the retention of their own retirement benefits, the property found by the chancellor to be acquired during the course of the marriage included the Market Street and Martin Street properties, and the Corvette collection.

¶13. Following *Ferguson,* the court considered the contributions of both parties to the accumulation of the real and personal property. This Court has recognized that chancellors are not limited to considering only the earning and cash contributions of a party, but it can be a sufficient contribution if one party renders services which are generally domestic in nature. *Arthur v. Arthur,* 691 So. 2d 997, 1001 (Miss. 1997) ( citing *Draper v. Draper,* 627 So. 2d 302, 306 (Miss. 1993).

¶14. In addition to contributing her employment income, Jean raised the parties' child, and handled most of

the household duties and expenses, which allowed Jimmie to use more of his time and money for business investments. The court determined Jimmie's contribution to the accumulation of the property included his income from employment and rental income, as well as his restoration of the Corvettes in the collection. There was no finding by the court as to any tax consequences or emotional value in reference to the distribution of the marital assets.

¶15. Jimmie claims that the chancery court failed to consider how the assets were acquired, accumulated, and maintained. The chancellor, however, did make such findings as mandated by this Court. Through record evidence and testimony from both parties, the court recognized that Jimmie invested much time and money in the Corvette collection, but it also recognized that he was able to do so primarily through the assistance and contributions of Jean.

¶16. Jimmie also stresses in his first assignment that the trial court failed to consider Jean's separate business ventures, and the chancery court's previous decisions to forgive Jean of $22,000 in debt and the payment of $5,000 to Jean for assets used in her business.

¶17. There was little evidence in the record as to separate business ventures of Jean. She did operate a lounge on the Martin Street property, which she testified never made a profit. Furthermore, this Court remanded *Carrow I* so the chancery court could make a more equitable distribution between the parties. Jimmie asserts that the remand was for the purpose of valuing the marital assets and determining Jean's interest in the assets. The chancery court's previous decision as to the written note evidencing debt of $22,000 owed to Jimmie by Jean was held to be unenforceable, and the $5,000 was for fixtures purchased by Jean for the lounge but moved by Jimmie. Thus, on remand the court had only to determine the marital assets, the value of such assets, and equitably distribute them.

¶18. We conclude that substantial evidence supports the Chancellor's distribution and that Jimmie's first assignment of error fails.

## III.

### *A.*

¶19. Jimmie next asserts that the Chancellor gave no consideration to Jean's adultery and that it erroneously misinterpreted prior decisions of this Court as entitling her to alimony.

¶20. Marital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship. *Carrow I,* 642 So. 2d at 904.

¶21. Jimmie argues that the Chancellor in effect disregarded the 3 adulterous affairs Jean engaged in during the marriage. Jean and Jimmie separated in May, 1989, after 27 years of marriage. During this period of separation, Jean engaged in an adulterous affair. After a short reconciliation in February, 1990, the couple finally separated in November, 1990. Jean had 2 additional affairs after this final separation before she filed a petition for divorce in April, 1991. There was no evidence that the affairs occurred at times other than when Jean and Jimmie were separated.

¶22. The chancellor correctly found the affairs to be just one factor for the court to consider in reference to any burden that may have been placed on the stability and harmony of the marital and family relationship.

*Id*. The chancellor further found that Jean greatly contributed to the stability and harmony of the parties' marital and family relationship by working full-time, taking care of the family's needs, taking care of Jimmie, and raising the parties' child. It is apparent that the chancellor considered the adultery, but found that it did not burden the stability and harmony of the Carrow family relationship. That finding is not manifestly erroneous.

*B.*

¶23. The chancellor's opinion states that "the court finds that the herein after equitable distribution will eliminate payment of alimony and should eliminate future friction between the parties." With this statement, the chancellor was ensuring that the court addressed the ***Ferguson*** factor regarding "the extent to which property division . . may be utilized to eliminate periodic payments and other potential sources of future friction between the parties." ***Ferguson***, 639 So. 2d at 928.

¶24. The lower court was to evaluate ***Carrow I*** in light of ***Ferguson,*** and it did in its opinion. Contrary to Jimmie's argument that the court meant Jean was entitled to alimony, we believe that the court was not assuming Jean's entitlement to alimony. Instead, it was ensuring that it weighed the factors necessary in reaching an equitable distribution. The alimony issue may not have been directly applicable to the case sub judice, but the factor as to eliminating future friction is. Thus, this assignment fails.

# IV.

¶25. In his final assignment of error, Jimmie asserts that the trial court refused to consider his Petition for Citation for Contempt.

¶26. Jimmie filed the contempt petition against Jean on June 16, 1992, concerning personal property he contends the chancery court awarded to him by order dated August 31, 1993, which Jean failed to give him. The motion was consolidated with the property division issue on remand.

¶27. Jimmie asserts that the chancellor refused to rule on his contempt motion. The chancellor did fail to rule on the contempt motion, but there is no record evidence that the chancellor refused to rule on the motion. It is the duty of the movant to pursue the motion to hearing and decision by the court. *See **Burcham v. Estate of Burcham***, 303 So. 2d 476, 480 (Miss. 1974). Jimmie, as movant, had the duty of securing a ruling on his motion from the trial court. There is no evidence, however, that Jimmie made any efforts to secure a ruling on the contempt issue either before or after the trial court issued its opinion. Moreover, this separate issue has no impact on those under consideration on this appeal. Accordingly, this assignment fails.

# V.

¶28. For the foregoing reasons, we conclude that the trial court's distribution of the marital assets of Jean and Jimmie Carrow was equitable in light of ***Ferguson*** and ***Chamblee***.

¶29. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶30. I dissent, because adultery should be considered in division, and because the appellee made no contribution to acquiring property. Further, the majority failed to consider the law of the case as handed down in the original opinion of 1992. Accordingly, I dissent.

1. *Carrow v. Carrow*, 642 So. 2d 901 (Miss. 1994) (*Carrow I*).